FILED

OCT 27 2015

U.S. DISTRICT COURT-WVND
CLARKSBURG, WV 26301

**Attachment A**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

Frederick Sellers

*Your full name*

**FEDERAL CIVIL RIGHTS
COMPLAINT
(*BIVENS* ACTION)**

v.

St. Joseph Hospital

Salvator Lansan, MD

Ruthie Carson, PA

United States of America,

*Enter above the full name of defendant(s) in this action*

Civil Action No.: 3:15cv121

*(To be assigned by the Clerk of Court)*

Groh
Aloi
Blalock

## I.  JURISDICTION

This is a civil action brought pursuant to **Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)**. The Court has jurisdiction over this action pursuant to Title 28 U.S.C. §§ 1331 and 2201.

## II.  PARTIES

*In Item A below, place your full name, inmate number, place of detention, and complete mailing address in the space provided.*

A.  Name of Plaintiff: Frederick Sellers   Inmate No.: 41780-050
Address: FCI Gilmer P.O. Box 6000 Glenville, W.Va. 26351

*In Item B below, place the full name of each defendant, his or her official position, place of employment, and address in the space provided.*

## PARTIES

(A)   <u>PLAINTIFF:</u>

Frederick Sellers, Reg. No: 41780-050

FCI Gilmer

P.O. Box 6000

Glenville, WV. 26351

(B) <u>DEFENDANTS:</u>

1)   St. Joseph Hospital

Buckannon, West Virginia

2)   Salvator Lansana, MD

St. Joseph Hospital

Buckannon, WV

3)   Ruthie Carson, PA

201 FCI Lane

Glenville, West Virginia 26351

(4) United States of America

In their individual and professional capacities.

B.5   Name of Defendant: _____

Position: _____

Place of Employment: _____

Address: _____

_____

Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?   □ Yes       □ No

If your answer is "YES," briefly explain: _____

_____

_____

_____

_____

## III.   PLACE OF PRESENT CONFINEMENT

Name of Prison/ Institution: `Federal Correctional Institute Gilmer`

A.   Is this where the events concerning your complaint took place?
     ☑ Yes       □ No

If you answered "NO," where did the events occur?

_____

B.   Is there a prisoner grievance procedure in the institution where the events occurred?   □ Yes       □ No

C.   Did you file a grievance concerning the facts relating to this complaint in the prisoner grievance procedure?
     □ Yes       □ No

D.   If your answer is "NO," explain why not: _____

_____

_____

_____

E.   If your answer is "YES," identify the administrative grievance procedure number(s) in which the claims raised in this complaint were addressed

Attachment A

and state the result at level one, level two, and level three. **ATTACH GRIEVANCES AND RESPONSES:**

LEVEL 1    Denied

LEVEL 2    Denied

LEVEL 3    Denied

## IV.  PREVIOUS LAWSUITS AND ADMINISTRATIVE REMEDIES

A.  Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?  ☒ Yes  ☐ No

B.  If your answer is "YES", describe each lawsuit in the space below. If there is more than one lawsuit, describe additional lawsuits using the same format on a separate piece of paper which you should attach and label: "IV PREVIOUS LAWSUITS"

    1.  Parties to this previous lawsuit:

        Plaintiff(s):   Frederick Sellers

        Defendant(s):   United States

    2.  Court: U.S. District Court for Northern West Virginia
        *(If federal court, name the district; if state court, name the county)*

    3.  Case Number: 3:15-cv-108

    4.  Basic Claim Made/Issues Raised: Gross Negligence
        Medical Malpractice

    5.  Name of Judge(s) to whom case was assigned:
        Robert W. Trumble

    6.  Disposition: Dismissed upon my request.
        *(For example, was the case dismissed? Appealed? Pending?)*

    7.  Approximate date of filing lawsuit: 9-14-15

Attachment A

8.      Approximate date of disposition. Attach Copies: *10-14-15*

C.      Did you seek informal or formal relief from the appropriate administrative officials regarding the acts complained of in Part B?
        ☒ Yes        ☐ No

D.      If your answer is "YES," briefly describe how relief was sought and the result.  If your answer is "NO," explain why administrative relief was not sought.

        I went through the entire administrative remedy process
        and was denied on each level.
        _____
        _____

E.      Did you exhaust available administrative remedies?
        ☐ Yes        ☐ No

F.      If your answer is "YES,", briefly explain the steps taken and attach proof of exhaustion.  If your answer is "NO," briefly explain why administrative remedies were not exhausted.

        From the initial informal resolution form to the tort
        claim.
        _____
        _____
        _____

G.      If you are requesting to proceed in this action *in forma pauperis* under 28 U.S.C. § 1915, list each civil action or appeal you filed in any court of the United States while you were incarcerated or detained in any facility that was dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted.  Describe each civil action or appeal.  If there is more than one civil action or appeal, describe the additional civil actions or appeals using the same format on a separate sheet of paper which you should attach and label "G.  PREVIOUSLY DISMISSED ACTIONS OR APPEALS"

        1.      Parties to previous lawsuit:

---

Attachment A

Plaintiff(s): Frederick Sellers _____

Defendant(s): United States _____

2. Name and location of court and case number:
 U.S. District court for Northern West Virginia ____
 Case no: 3:15-cv-108 _____
 _____

3. Grounds for dismissal: ☐ frivolous ☐ malicious
 ☐ failure to state a claim upon which relief may be granted

4. Approximate date of filing lawsuit: 9-15-15 _____

5. Approximate date of disposition: _____

## V. STATEMENT OF CLAIM

*State here, as **BRIEFLY** as possible, the facts of your case. Describe what each defendant did to violate your constitutional rights. **You must include allegations of specific wrongful conduct as to EACH and EVERY defendant in the complaint.** Include also the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, you must number and set forth each claim in a separate paragraph. **UNRELATED CLAIMS MUST BE RAISED IN SEPARATE COMPLAINTS WITH ADDITIONAL FILING FEES. NO MORE THAN FIVE (5) TYPED OR TEN (10) NEATLY PRINTED PAGES MAY BE ATTACHED TO THIS COMPLAINT. (LR PL 3.4.4)***

CLAIM 1: _____
_____
_____
_____
_____
_____

Supporting Facts: _____

## CLAIMS

I Frederick Sellers suffered a horrendous injury from an ill-advised hernia operation while housed at FCI Gilmer. Federal staff performed unprofessionally regarding my conditions.

1)   A violation of my 8th Amendment rights when they subjected me to cruel and unusual punishment by negligently scheduling a ill-advised hernia operation for me when I never complained of one. Nor have I ever been assessed for one. Also for being deliberately indifferent to my needs of proper health care. And denying me follow-up care after surgery.

2)   Denial of pain medication.

3)   Due to the erroneous surgery I now suffer from anxiety and paranoia from constant thoughts of what really went on when the surgeon cut me open.

## STATEMENT OF FACTS

(1) On 10-14-14, after noticing a rash on my back and chest, and feeling severe pain, I submitted a sick-call slip to the medical staff at FCI Gilmer (Document 1). I was seen by PA Ms. Lehman. She assessed the rash and diagnosed it as herpes zoster (A.K.A Shingles). We discussed my diabetes and high-blood pressure. She prescribed me meds for the shingles and sent me on my way.

(2)  On 1-26-15 while housed at FCI Gilmer I was taken from my cell and placed in the SHU (Special Housing Unit). I thought I was taken there for some disciplinary reason. However, officer J. Clayton informed me that I have a shceduled hospital trip for an operation. Filled with incredulity I asked what kind of  operation and he stated that I had a hernia operation. I told him that I don't have a hernia . He appraised me that the document he has says that I have multiple hernias. I was taken 'to a cell for the night and taken to the hospital the next day.

(3)  On 1-27-15 I was transported from FCI Gilmer to St. Joseph's Hospital by Officers J. Stout and J. Clayton. I arrived there and signed a few papers. I was stripped out of my clothes and placed in a hospital gown. I was asked a series of questions by the medical staff at the hospital. Questions regarding my diabetes, my birth date, and had I eaten anything. My blood pressure was taken as well as my sugar levels. Subsequently, the surgeon came in and he asked me how's my pain? I replied what pain? I am not feeling any pain. The two officers that

brought me to the hospital then informed the surgeon that I had told them that they have the wrong guy. The surgeon asked me if I ever complained about a hernia, and I replied no. He asked if I ever complained of stomach pains, and I replied in the negative. I told him that I once had H.pylori (stomach bacteria). He gave me an odd look and waved his hand in disbelief. Skeptical he looked at his reports and began to ask me a series of questions to confirm my identity. He asked me to lay back and felt my stomach and asked if I felt any pain? I replied in the negative. He then directed me to get in a sit-up position and again felt my stomach, while asking me if I felt anything? I again replied in the negative. he then claimed that he felt something, and asked me if I wanted the operation? Filled with uncertainty I couldn't answer. He assured me that he was only going to make a 2-inch incision, gesturing with his fingers. Convinced, so I tell him to proceed because he is a doctor and I'm only a barber. Subsequently the operation was conducted.

(4)   When I returned back to the institution I was taken to my cell. About an hour later PA Ruthie Carson came to my cell and asked me how was I feeling and I said I was alright. She then asked me to lift my shirt and I showed her the bandaged wound. She then stated that there wasn't much bleeding, and assured me that she would be back to change the wound the next day. Prior to her leaving I asked her for some pain medication,

-2-

and she agreed to get me some. I never received the pain
medication, and had to endure the pain. By the time I received
fresh bandages the wound was infected. See Document 2.

(5)  On 2-9-15 I went to Health Services open house to retrieve
a copy of my medical records to substantiate me being scheduled
for a hernia operation. As I scrutinized the documents I noticed
there were reports of an inmate being assessed on 10-14-14 for
multiple hernias, and PA Lehmann Assessed and diagnosed the
inmate. As I continued to read I noticed unfamiliar physical
descriptions the assessed inmate had. Descriptions that don't
fit me. I noticed the inmate was obese and had a protruding
stomach, but what really stood out was the fact that this
unidentified person had been stabbed. And judging by the notes
of PA Lehmann his stab wounds were fresh because she asked
him if he wanted a temporary ostomy. See (Document 3). I am
not obese. I have never been stabbed nor have I complained
about a hernia.

(6)  Upon me continuing to read my medical records I noticed
a note that PA Ruthie Carson documented. She noted that on 1-27-
15, when she came to my cell, she informed me of the following:
"No signs of new bleeding; instructions given for no lifting
over 10 lbs; to wear abdominal binder for 3 months; may shower
and return to work in 2 weeks. MDS done; will remove old dressing
in 24 hours after post op." See Document 4. Unfornately PA
Ruthie Carson did none of the above and I wasn't laid in from
work which is in sanitation. My work detail entails lifting heavy
trash cans, cleaning, breaking boxes, etc., all of which further
risked aggravating the wound. She also never gave me any new

-3-

gauze, and I had to cover the wound with gauze I received from another inmate which was taped on with mailing labels.

(7)  On or about 2-8-15 I began the grievance process. Amidst that time my wound became badly infected. I sent PA Mrs. Wilson a request via e-mail. I expressed to her that my wound was leaking puss and blood and had a foul smell to it. PA Wilson instructed me to come over to medical. See Document 2. She assessed the wound, took a culture from it, and then prescribed me some antibiotics. She also asked PA Ruthie Carson if she could get me some fresh bandages. PA Carson retorted what does he need bandages for? After a 30 minute wait I decided to leave because I had the impression that PA Carson had an attitde. The following day I went over to health services to once again try to get fresh bandages. PA Wilson asked me why I didn't get them yesterday, and I informed her that PA Ruthie Carson had me waiting. Then PA Wilson again asked PA Carson to get me some bandages, and PA Carson immediately gets in my face screaming: "Oh it's important now? Oh it's important now? It wasn't that important yesterday! Why did you leave?" I replied that it was just as important the first day I came back and no one gave me fresh bandages or cleaned my wounds. She then became irate and took me into a room and pointed her finger in my face and said that I better never insult her like that again. She then went on a tirade about me throwing her under the bus and blaming her. She then had me lift up my shirt so she could see my wound. She began yelling that it is not infected and how long she's been in the

-4-

military and has seen much worse injuries. Also, how I'm complaining about such a small cut. She would not let me get a word in so I remained silent while she put clean bandages on my wound. She then taped some tape around a popsicle stick and grabbed several gauze and stuffed them in my shirt pocket and said don't come back here complaining. I left medical and went back to my cell to make a note of her behavior.

(8)  On 2-18-15 I received an e-mail from PA Wilson informing me that the results came back from my culture swab and another infection was detected which meant that she'd have to prescribe another antibiotic. See Document 3.

(9)  On 2-23-15 I was scheduled to see Dr. Anderson, in which he observed my infection. At that time my navel was closing due to the effectiveness of the meds. However, you could still see my flesh and the puss. He informed me that my navel may not fully close on its own so he scheduled me a trip to the hospital to get it surgically closed. See Document 5.

(10) On 5-11-15, approximately 2 months after seeing Dr. Anderson, I was called to health services and informed that I had to spend the night in the SHU (Special Housing Unit) because I had an operation scheduled for the following day. I declined because my navel had completely closed and showed no signs of infection. I was in fear of what would happen in relation to another operation that I felt would be unnecessary. See Document 6.

(11) The aforementioned, and attached documents, support my complaint that I was erroneously scheduled for a heria operation. **A hernia that I had never complained about, nor had.**

## REQUEST FOR RELIEF

I request the following relief:

(1)   Declaratory judgment that the defendants violated my constitutional rights.

2)   Trial by jury on the facts, legal claims, and amount of damages.

3)   Compensatory damages for 3,000,000.00 from each defendant in their professional and individual capacities.

4)   Punitive damages for 3,000,000.00 from each defendant in their professional and individual capacities.

5)   Judgment for cost and fees of this legal action.

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above-captioned action, and that he/she has read the above-complaint and that the foregoing information contained in this complaint is true and accurate to the best of my knowledge. Pursuant to 1746 and 18 U.S.C. 1621.


Executed at _____     On _____
                    Location                              Date


                                        _____
                                                Signature